# IN THE COURT OF APPEALS OF IOWA

No. 15-0615
Filed May 25, 2016

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**SHANEKA NASHEA ALEXANDER,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Christopher L. Bruns, Judge.

A criminal defendant appeals her sentence after being found guilty of one count of interference with official acts inflicting bodily injury and one count of interference with official acts. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Shaneka Alexander appeals her sentence after being found guilty of one count of interference with official acts inflicting bodily injury and one count of interference with official acts. She argues the district court impermissibly applied a fixed sentencing policy in sentencing her to prison. We find the district court did not and affirm the sentence imposed.

## I. Background Facts and Proceedings

On February 11, 2015, a jury found Alexander guilty of interference with official acts inflicting bodily injury, an aggravated misdemeanor, and interference with official acts, a simple misdemeanor. Both crimes constituted violations of Iowa Code section 719.1 (2013).

Evidence presented by the State at trial established Alexander was present when officers arrived at an apartment complex in the early morning hours of July 21, 2014. The officers went there in response to a report of a fight. When officers asked Alexander to speak with them about what happened, she refused to comply. When officers attempted to place Alexander in custody, she resisted their efforts. Finally, when one of the officers stood behind Alexander and pinned her against a wall in order to facilitate handcuffing, she intentionally dropped her weight onto the officer's knee in an attempt to avoid being handcuffed. The officer whose knee Alexander forcefully sat on was injured; she fell to the ground in pain, was taken to the emergency room, and required surgery. When the officer testified at trial—nearly seven months later—she was still undergoing treatment and had not returned to full duty.

Alexander was sentenced on April 3, 2015. The State recommended Alexander be sentenced to concurrent two-year and thirty-day terms of imprisonment, based primarily upon the injury caused to the officer and also the fact Alexander committed the crimes while she was on probation for two violent felonies.[1] In those cases, she broke into occupied homes and assaulted residents inside. Apart from those two felony convictions, Alexander also had prior convictions for assault and assault on a peace officer. The State argued the history of violent criminal behavior made a sentence of imprisonment the only appropriate choice.

Alexander asked the court to suspend all but sixty days of her sentence and to order supervised probation. She pointed to the fact the court had placed her on supervised probation for her previous convictions and argued that under the corrections continuum set forth in Iowa Code section 901B.1, other intermediate sentencing options were more appropriate than imprisonment. Alexander also told the court she had been making efforts to improve herself and asked for another chance so her son could have a parent in his life.

The district court agreed with the State's recommendation and sentenced Alexander to two-year and thirty-day sentences of imprisonment, to be served concurrently. The district court stated the following on the record to explain its sentencing decision:

---

[1] Because Alexander's crimes in this case constituted violations of the terms of probation in her two prior felony cases, the district court held a probation revocation hearing on April 3, 2015, in addition to the sentencing hearing. Alexander stipulated her jury conviction constituted a violation of probation in each case, and the district court extended Alexander's probation to five years for each as a result.

Well, Ms. Alexander, I've spent a very considerable amount of time in the last few days going over portions—the important portions of the files from the other two cases, your presentence investigation report, this file. . . . [W]e have a case here where a jury found that you directed actions at this officer that ended up injuring her.

. . . .

I have agonized over what to do here, because I recognize that you're a mom and I recognize there's probably some factors that we can't really openly talk about here, some cultural factors, some law enforcement practice factors, some heat of the moment factors that I really can't consider that might have played a role here. What I can consider is what's in the PSI, what's in your file, what you said here, what the attorneys have said and that's all that I'm considering in making my decision here today.

. . . .

You hurt somebody. You're somebody that's already on probation and you know we tell people—I tell people when I put them on probation, no law violations means no law violations. We expect everybody to follow the law and if you're on probation, we expect it even more. And you not only violated the law, but you hurt somebody when you violated the law and I can't look beyond that fact.

I am also a little concerned that until the hammer came down in this case, you weren't trying to do anger management, but you had a chance to do it. You weren't employed the way you were supposed to do—to be, you weren't necessarily doing all the things to put your life back together.

You started trying to put your life back together when you realized I might be going to send you to prison in this case. That doesn't show me that you're someone that was really looking to put things together before this happened. It shows me that you're someone who is hoping that that will get you a lighter sentence.

So what I'm inclined to do here is . . . I'm going to send you to prison for two years on your aggravated case and at the end of two years, you will come out and you will be on probation for the other two felony offenses.

. . . .

The court would indicate that the primary reasons for this sentence are the need to protect the community. I have attempted to balance that with the need to rehabilitate the defendant, but I agree with the Department of Corrections that in light of the history we have here, what's been done so far is not rehabilitating this defendant and I think she needs a wake-up call in order to have any hope of changing the pattern of behavior.

And I've been particularly impressed by the nature that this was a law enforcement officer, that all of this simply could have been avoided by just simply talking to the law enforcement officers.

> And that's what I haven't been able to get around, that everybody knows that whether you like what the police are talking to you about, whether you're happy or not, if you talk to them, that's your obligation when they come talk to you.
>      So based on the facts that came in at trial, I can't get past that. And the end result is an officer gets hurt. And I recognize there's no finding this is a serious injury, it is just a bodily injury, but it was an injury that was completely avoidable and under the circumstances could and should have been avoided.

Alexander now appeals.

## II.  Standard of Review

When reviewing a district court's sentencing decisions, we will not reverse absent either an abuse of discretion or a defect in the sentencing procedure such as the consideration of inappropriate matters.  *See State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

## III.  Analysis

Alexander argues the district court abused its discretion when it applied a fixed sentencing policy rather than engaging in the meaningful exercise of discretion mandated by Iowa Code section 901.5.  In other words, she asserts the district court's reasoning, as stated on the record, "suggests a fixed policy of sentencing those defendants who inflict injury upon law enforcement officers to harsher penalties."  Alexander analogizes the sentence imposed in this case to the sentence vacated by our supreme court in *State v. Hildebrand*, 280 N.W.2d 393, 397 (Iowa 1979).

In *Hildebrand*, the district court stated as follows when asked to grant a deferred sentence to a criminal defendant who drove while intoxicated and caused an accident:

THE COURT: Well, in view of the fact there was an accident involved here, I am not inclined to grant a deferred sentencing in this matter. Therefore, the request for a deferred sentence is denied.

[DEFENSE COUNSEL]: Would Your Honor be more specific with respect to the denial of the deferred sentence? Is the only reason that the deferral is being denied the fact that there was an accident involved?

THE COURT: Yes. I do not believe that the law requires me to give a deferred sentence under any circumstances; and I have the policy that when there is an accident involved, I do not and will not grant a deferred sentence. . . . I maintain that when there is an accident involved, particularly an accident in which the defendant is clearly at fault, I do not believe it warrants a deferred sentence, and I will not grant a deferred sentence.

280 N.W.2d at 395. Our supreme court explained a district court must apply discretion at sentencing based upon the specific facts and circumstances of the case at hand, and the district court's "personal, well-defined rule precluded the exercise of its discretion in rendering judgment." *Id.* at 396–97 (vacating the defendant's sentence and remanding for resentencing with instruction that the sentence "shall be imposed by an exercise of [the] court's discretion without application of a personal, inflexible policy relating to only one consideration").

We do not find *Hildebrand* analogous. The record does not support the conclusion the district court applied a fixed sentencing policy. To the contrary, the record supports the conclusion the district court carefully considered a variety of information—the statements of Alexander and the attorneys, the PSI, Alexander's criminal file, the attendant circumstances of her crimes, the fact she committed the crimes while on probation for violent offenses, and her past failures to take advantage of opportunities at rehabilitation—before ultimately determining imprisonment was appropriate in Alexander's case. In the district court's own words, it agonized over the decision. We find the district court did

not apply a fixed sentencing policy but rather exercised reasoned discretion in imposing Alexander's sentence.

**AFFIRMED.**